# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58517-1-II |
| Respondent, | |
| v. | |
| D'ANDRE DESHAY AARON, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.— D'Andre Deshay Aaron had a history of mental health problems. In April 2022, he punched one person and stole their cell phone, then he punched the window of another person's car after they refused to give him a ride. It took first responders half an hour to calm him down enough to treat his injuries and he has no independent recollection of the incident.

Aaron pleaded guilty to second degree robbery and second degree malicious mischief. The parties debated Aaron's offender score at sentencing. And defense counsel told the trial court that Aaron was not eligible for the mental health sentencing alternative (MHSA). The trial court acknowledged that Aaron had significant mental health issues and sentenced him to the bottom of the standard range.

Aaron appeals. He argues, and the State concedes, that he received ineffective assistance of counsel because his attorney inaccurately told the trial court that Aaron was not eligible for the MHSA. And he argues that Engrossed House Bill (EHB) 1324, which amended former RCW 9.94A.525 (2021) to remove most juvenile adjudications from adult offender score calculations, should apply prospectively because the law took effect before he was sentenced. He also asserts,

and the State concedes, that his offender score for the malicious mischief count was improperly calculated.

We accept the State's concessions and remand for a new sentencing hearing with a corrected offender score. EHB 1324 does not apply to Aaron's offender scores for offenses that occurred in April 2022.

FACTS

A defendant who has been convicted of a felony that is not a serious violent offense or sex offense, may seek a sentence under the MHSA if they have been diagnosed with a serious mental illness, are willing to participate in the sentencing alternative, and a judge finds that the "defendant and the community would benefit from supervision and treatment." RCW 9.94A.695(1)(c).

In April 2022, Aaron punched one man and stole his cell phone, then he punched the window of another man's car when he refused to give Aaron a ride. When police found Aaron several blocks away, he was agitated and covered in blood, and it took officers a significant amount of time to calm him down enough to arrest him and treat his injuries. The State charged Aaron with second degree robbery and second degree malicious mischief; he pleaded guilty to both counts. Second degree robbery is a violent offense, but not a serious violent offense, and second degree malicious mischief is a nonviolent offense. Former RCW 9.94A.030(46), (58)(a)(xi) (2021).

In his statement on his plea of guilty, Aaron stated that he had no independent recollection of the charged events, and that he "was going through an extreme emotional or mental health issue that day." Clerk's Papers at 15. Aaron also explained that he had been recently released from custody to Lewis County, the county of his first felony adjudication, "to be housed by [the

Department of Corrections] to receive further mental health treatment in the community." *Id*. Aaron "did not get that treatment, and was without medication," and did not know how he got from Lewis County to Pierce County, where the charged events occurred. *Id*.

While Aaron's case was pending, the legislature passed EHB 1324 with an effective date of July 23, 2023. The law amended former RCW 9.94A.525 to remove juvenile adjudications from offender score calculations. *See* LAWS OF 2023, ch. 415, §2; RCW 9.94A.525(1)(b).

At sentencing in August 2023, the parties disagreed about Aaron's offender score. The State asserted that Aaron's offender score was 9+ points for both counts. Aaron's criminal history included juvenile adjudications for two counts of third degree assault and one count of first degree robbery. It also included adult convictions for third degree assault, second degree assault, and second degree robbery.

The State recommended a sentence of 74 months, which was the middle of the standard range for second degree robbery with an offender score of 9+ points. The State did not request a sentence at the high end of the standard range because Aaron pleaded guilty and "had a rough go of it in life" due to his mental health history. Verbatim Rep. of Proc. (VRP) (Aug. 7, 2023) at 20.

Aaron did not move for, or request, a MHSA. *See* RCW 9.94A.695(2). Defense counsel stipulated to some of the State's offender score calculation but argued that EHB 1324 applied to exclude Aaron's juvenile adjudications from his offender score because the law took effect before the date of sentencing. Counsel asserted that removing the juvenile adjudications would leave Aaron with an offender score of 7 points. Defense counsel also sought an exceptional downward sentence and argued that severe mental health problems contributed to Aaron's offenses, emphasizing that Aaron was "manic and paranoid" when he was arrested. VRP (Aug. 7, 2023) at

3

24. And Aaron told the trial court that he had "been really plagued with mental illness ever since [he] could remember." *Id*. at 28-29. But counsel did not believe that Aaron was eligible for MHSA "because of the standard sentencing range." *Id*. at 26.

The trial court ruled "that the law in existence at the time that the crime was committed is the law that we look at for purposes of determining the offender score," so EHB 1324 did not apply because Aaron's current offenses occurred in 2022. *Id*. at 19. It calculated that Aaron's offender score was 9+ points for both counts. The trial court acknowledged that "there [was] a significant mental health issue at play" in Aaron's case. *Id*. at 29. It therefore imposed a sentence at the bottom of the standard range of 63 months for the robbery and 22 months for the malicious mischief, to run concurrently. The trial court also required the Department of Corrections to provide Aaron mental health treatment and ordered that he be released to a county capable of accommodating his mental health needs after his sentence.

Aaron appeals his sentence.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Aaron argues, and the State concedes, that he was denied effective assistance of counsel when his attorney told the trial court that he was not eligible for the MHSA. We accept the State's concession and remand for a new sentencing hearing.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). This right to effective assistance extends to sentencing. *State v. Roach*, 18 Wn. App. 2d 98, 113, 489 P.3d 283 (2021). A defendant claiming

ineffective assistance must show that "defense counsel's conduct was deficient" and that "the deficient performance resulted in prejudice." *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018). "A defense counsel's performance is deficient if it falls below an objective standard of reasonableness and was not based on a tactical decision." *Id*. "To show prejudice, a defendant must show a reasonable possibility that, but for counsel's purportedly deficient conduct, the outcome of the proceeding would have differed." *Id*.

"The duty to provide effective assistance includes the duty to research relevant statutes," and the failure to do so can be constitutionally deficient. *State v. Estes*, 188 Wn.2d 450, 460, 395 P.3d 1045 (2017). For example, Division Three has held that counsel rendered ineffective assistance by inaccurately agreeing that the trial court could not consider a special sex offender sentencing alternative when, in fact, it could. *State v. Adamy*, 151 Wn. App. 583, 588, 213 P.3d 627 (2009).

A defendant is eligible for a MHSA if they have been convicted of a felony that is not a serious violent offense or sex offense, have been diagnosed with a serious mental illness, they are willing to participate in the sentencing alternative, and a judge has found that the "defendant and the community would benefit from supervision and treatment." RCW 9.94A.695(1)(c). Neither second degree robbery nor second degree malicious mischief is a serious violent offense or a sex offense. Former RCW 9.94A.030(46), (47). But Aaron's counsel represented to the trial court that Aaron was ineligible for a MHSA "because of the standard sentencing range." VRP (Aug. 7, 2023) at 26. This was an inaccurate statement of the relevant law which was constitutionally deficient under these circumstances. *Estes*, 188 Wn.2d at 460.

And there is a reasonable possibility that the outcome of the sentencing hearing would have been different if Aaron's counsel argued that he was eligible for a MHSA. Aaron himself, his counsel, the State, and the trial court all clearly recognized that the charged incident was the direct product of Aaron's longstanding and severe mental health problems. Specifically, the trial court considered Aaron's "significant mental health issue" to be a mitigating circumstance supporting the imposition of a sentence at the bottom of the standard sentencing range. VRP (Aug. 7, 2023) at 29. Thus, Aaron can show prejudice because there is a reasonable probability that he would have received a MHSA had counsel argued that he was eligible. *Adamy*, 151 Wn. App. at 588.

Aaron received ineffective assistance at sentencing, so we accept the State's concession and remand for a new sentencing hearing. We will address the arguments regarding Aaron's offender score because they may remain relevant upon remand.

II. OFFENDER SCORE

A.      Amendment to Former RCW 9.94A.525

Aaron next argues that the trial court improperly calculated his offender score by including his juvenile adjudications. He asserts that "EHB 1324 applies prospectively to sentencings that occur after the legislation's effective date, July 23, 2023, even where the offenses were committed before that date." Br. of Appellant at 15. Because his sentencing took place in August 2023, Aaron asserts that the amendment applies to his case. We disagree.

Sentences imposed under the Sentencing Reform Act of 1981, ch. 9.94A RCW "shall be determined in accordance with the law in effect *when the current offense was committed*" unless otherwise provided. RCW 9.94A.345 (emphasis added). And the savings clause statute provides "Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or

6

penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared" in the amending act. RCW 10.01.040. The savings clause applies to "substantive changes in the law," which includes changes to "the punishment for offenses or the type of punishments possible." *State v. Jenks*, 197 Wn.2d 708, 721-22, 487 P.3d 482 (2021).

It is true that new laws affecting costs that are not final until all appeals are completed may apply to cases that are pending on appeal. *State v. Ramirez*, 191 Wn.2d 732, 748, 426 P.3d 714 (2018). But the Supreme Court has rejected the argument that new laws substantively affecting terms of confinement apply to cases pending on appeal without an express indication of legislative intent to that end. *Jenks*, 197 Wn.2d at 722-24. In *Jenks*, the Supreme Court held that a new law removing second degree robbery from the list of most serious offenses did not apply to cases pending on appeal at the law's effective date. *Id*. at 711. This was because "the triggering event for determining who qualifies as a persistent offender occurs when someone has been convicted of a most serious offense *and* was also, in the past, convicted of two other most serious offenses on separate occasions." *Id*. at 722.

The amendment to former RCW 9.94A.525 at issue in this case added a clause stating that "adjudications of guilt pursuant to Title 13 RCW [for juvenile adjudications] which are not murder in the first or second degree or class A felony sex offenses may not be included in the offender score." LAWS OF 2023, ch. 415, §2. The intent statement provides that the legislature intended to facilitate rehabilitation, reintegration, and due process, and to recognize the research on juvenile brains and the disproportionate impact of juvenile adjudications on adult sentences. LAWS OF 2023, ch. 415, §1. Because the amendment affects offender scores, it is a substantive change in the law

to which the savings clause applies. *Jenks*, 197 Wn.2d at 721. Nothing in the bill mentions retroactive application or indicates that it should apply to cases pending on the effective date. Applying the 2023 amendment to Aaron's case would therefore violate RCW 9.94A.345 and RCW 10.01.040 by applying a sentencing law that was not in effect when he committed his offenses in April 2022.

In sum, EHB 1324 does not apply prospectively to Aaron's sentencing.

B.      Malicious Mischief Offender Score

Finally, Aaron argues, and the State concedes, that the trial court improperly calculated his offender score for the malicious mischief count. We accept the State's concession. On remand, the trial court should recalculate Aaron's offender score.

The trial court calculated Aaron's offender score as 9+ points for both counts because it counted his two prior adult convictions for violent offenses at 2 points each. But because second degree malicious mischief is a nonviolent offense, the offender score calculation for that count was different than the calculation for the second degree robbery, which was a violent offense. Former RCW 9.94A.030(58)(xi); former RCW 9.94A.525(7), (8). For current violent offenses, prior adult violent felonies counted for 2 offender score points. Former RCW 9.94A.525(8). But for a current nonviolent offense, any prior adult felony or violent juvenile felony counted for only 1 point. Former RCW 9.94A.525(7). And a nonviolent juvenile felony was only half a point. *Id.* Aaron had prior juvenile adjudications for four nonviolent felonies and one violent one for a total of 3 points. He also had three prior adult felonies for 3 more points. And he had 1 additional point for the current second degree robbery, and 1 more point because he committed his current offenses on community custody, for a total of 8 points. Former RCW 9.94A.525(19). Thus, Aaron and the

State are correct that his offender score was incorrectly calculated for the malicious mischief charge. On remand, the trial court should correct Aaron's offender score to reflect the appropriate point total.

## CONCLUSION

We accept the State's concessions and remand for a new sentencing hearing. The 2023 amendment to RCW 9.94A.525 does not apply to Aaron's offender scores for offenses that occurred in April 2022.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Maxa, J.

Price, J.

9